Browning, O'Scanlan, and Fisher. We have two argued cases, cases to be argued this morning, one submitted case. We will probably adjourn about 10 o'clock, so far as that panel is concerned, and then we will confer on those cases, and then a new panel consisting of Judges O'Scanlan, Hawkins, and Fisher will reconvene probably between 10.15 and 10.30. So those of you that are in the second panel, there's no need to wait around, and I can assure you that we will not start any earlier than 10.15. It might even be closer to 10.30. Are there any questions about the scheduling of the two panels? If not, we will proceed to hear oral arguments in Bruce v. Terhune. I understand Mr. Dowd has not yet arrived. Is that correct? All right. We will start with the second case first. You may proceed. Thank you, Your Honors. May it please the Court, Anne McClintock on behalf of Gary Bruce, the appellant. This is a case that requires this Court to look at Jackson v. Virginia and to give concrete meaning to the reasonable doubt requirement that the State carries as a constitutional matter. And I think that Mr. Lowe and I, we don't disagree, I don't think, from the briefing about what was said at trial. We disagree solely about what are the constitutional implications of the evidence that was presented and whether as a constitutional matter it was sufficient to prove the first four counts of molestation that were alleged. And of course we're applying the AEDPA standard, which means that we look to see whether the California court made a reasonable application of Jackson in this case. Exactly. That would be my next sentence, is that once you can do it in either order, my logical mind says figure out if there's a problem and then look at what the State courts did with it and decide whether that was objectively unreasonable. And what I'd like to do is start by just going back to Jackson. And it's an interesting reread that I did over the last couple days several times. And the context that Jackson was decided in that I want to point out that I didn't realize before I had this case was that the previous Supreme Court decision in Thompson talked in terms of a constitutional threshold, a protection of constitutional rights that was based on a habeas review of no evidence. If there was no evidence supporting the conviction, that was not, that didn't pass constitutional muster. And what Jackson said is that even in a State prisoner of habeas context, that that does not, that is not enough. Jackson says that the reasonable doubt jury burden of proof on the State has concrete meaning only if the evidence that is presented is sufficient to convince a reasonable, rational juror to near certitude. And it's that language, and there are other variations of it, another variation that was used in the briefing on direct appeal, and it shows up and it connects to the corroboration jury instruction question is, is the testimony of the complainant inherently improbable? And that's why I'm focusing just on the first four counts. The deference that we need to give, whether as a trial judge or as a federal habeas appellate court, to the juror's credibility assessment is covered in the Jackson standard that says you have to look at the evidence in light most favorable of the verdict, any differences of opinion about the testimony, you assume that the jurors found it in favor of the government, in favor of the verdicts. Doing that, I have to say what we need to look at as a factual matter is what did Katina Bruce say? What did she complain about, and what actions took place? And all the disagreements I have to put aside. So, for example, when she says that there were two incidents where she, Angela, Amanda, Jamie, the son, and Dawn slept in the bed together, and there were two incidents that identical people were in this bed when she was molested, we have to accept that under the Jackson standard as what the jury found. And it's consistent with their verdicts on all six counts. The fact that the other kids said there was only one incident, the fact that the other kids said there were different arrangements of children or that the son was not there, we have to assume the jury found what Katina said was true. And when you look at what Katina, and this is where I think what the State court judges and, again, what the district court judge did with this case where it was objectively unreasonable, is that it did not look at the totality of what Katina claimed. And it's the totality. It's not just she says he touched my breasts, he French kissed me. He did these acts for his period interests that satisfied the elements requirements of the charges. Thompson said that would have been enough. And the Supreme Court in Jackson said, no, that doesn't satisfy constitutional standards. We have to look at, not if there was any evidence or no evidence to support it, but we have to look at the evidence as a whole, taking the light most favorable to the verdict. That's Katina's story. So if you look at Katina's story, what she says happens is that there were five kids sleeping in this bed. Now, I'm going to put aside what size the bed was. I'll give her that, you know, she said it was a king size bed, so it's the largest bed of the variation of the testimony. There are five kids in this bed. She says they're not touching each other. I don't have any evidence about the bed other than I can't remember. I know he testified. Was there any photographs or anything like that? There are photographs in the, if you hang on. Well, there are. During the clerk's transcripts, I have it flagged, but it's like about 128, I think. There was a motion for a new trial made by the trial attorney. That's, you can find it in the index of the clerk's transcript. And then that motion was continued to the sentencing hearing. During the course of the evidence that the jury heard, was there, did somebody bring in and say, Look, here's the bed. There were exhibits and diagrams. Because we got this case in appeal, I don't know, I don't have, the exhibits aren't automatically part of the. . . I got it even more removed from the. . . Right, no. You did. I realize that. There were exhibits and diagrams that were done that the jury saw. It's not clear to me whether the jury actually saw the photographs. I know that they were made part of the clerk's transcript in connection with the motion for a new trial. And in connection. . . I think they were actually attached to a mitigation statement for sentencing purposes. Well, I'm just interested in what the jury saw. You're saying. . . Well, the jury. . . Look at the totality, and I'm trying to understand what they were focused on. I agree with that. And what the jury was told was Katina's version, which we accept. So there's a large bed, five kids in it asleep, three vertically. She's on the left-hand side, two across the bottom, that they're not touching each other, and that into this bed comes Mr. Bruce, a 5'10 man, which they were aware of that. They saw him. He was out of custody, so when he testified. . . I don't know. . . I don't remember specific how tall are you question, but they saw him in trial. So they had that information before him. And then what she says took place is that over a course of 20 minutes, these molestations took place. That there was him touching her, her rolling around, rolling away from him, him talking to her in a whisper, but talking to her more than once. What time of. . . Refresh me on. . . I read the testimony yesterday, but I'm unclear as to when at night this took place. It was what time of night? It was after midnight? She gave no time frame. It was after everyone had fallen asleep. There's no evidence. . . There's no time frame as to whether it was post-midnight, 4 in the morning, 2 in the morning. There's no evidence of that. It was sometime they were in the bedroom watching movies or television that the movie was ended. She says the lights were out already. Okay. And that everyone was asleep when he came into the bedroom and climbed into bed with them. Well, so I'm looking at the California Court of Appeals' opinion, and I'm wondering what is it in that analysis that constitutes the gap here? Why was that not a reasonable interpretation? I'm looking at page 10 of the opinion. Of the excerpts of record, tab 1. I'm sorry? Page 10, excerpts of record, tab 1. There are two ways that this is the first full paragraph. There are two ways. There's a fact. . . Katina testified, that one? I'm sorry. The first full paragraph, the one saying. . . Katina, yes. Okay. The second sentence, when you read that paragraph, their rationale for finding sufficient evidence is that one, as a factual matter and a legal matter, I guess it's two, Don corroborated Katina's statements. She corroborated Katina's accusations. And it's objectively unreasonably for two separate reasons. One is, in a factual matter, what they quote Don as saying here does not corroborate Katina's allegations. Just factually, it's inconsistent with what Katina said. If you look back at Katina's testimony, what she said happened was that during the molestation, she said nothing. She did not say a word. It was only after the crime was completed and Mr. Bruce had fallen asleep, that she had fallen asleep and then woken up. And it was at that point she rousted, I believe it was Amanda on the other side of the bed over next to Jamie, and Don, who was the non-family member, the friend. So this is all great for jury argument, but, you know, what is the operative omission here, I think, is what I'm, maybe, I think Judges Scanlon, maybe, too. What are you trying to wrap us around on? I read the testimony. Right. And, yes, there are contradictions. And, yes, two people in that situation could have perceived and recalled it differently under the circumstances. The jury sorts it all out, sees them on the stand, and what? What's the gap here? What are we missing? The gap, and what I think is the same problem that the court of appeals decision, why that's objectively reasonable is that the courts are saying that because Don's testimony corroborated the complainant's testimony. Well, what if she didn't? What if, let's suppose she didn't? Okay. If it doesn't, under State law, and if you look at the cases interpreting the reasonable doubt instruction, there is ample authority that says that a single witness is sufficient as long as the jury believes her beyond a reasonable doubt. And so that's a very good point. And it brings it back to what does it mean as a constitutional matter to be beyond a reasonable doubt? Look, I tell a story, okay? And my witness corroborates a lot of what I say, but not one critical fact. I mean, she did say she corroborated, as I recall, that she heard you say no or something in the middle of the night. That is the issue. That was a different incident you're saying? No. What I'm saying is that that's not corroboration because Katina says she never said no. So as far as corroboration, what corroboration has to do as a legal matter, which is the other part that I think is wrong about this decision, is that to corroborate the criminal act. I'm sorry. Did you want to finish your question? Yeah. Don said what about the no? Don said there were three variations of it, but she basically said she woke up at some point and heard Katina say no, leave me alone, or some variation of that. Katina says in her testimony she never said any of that. Okay. What Katina says happened, so the inference that the State is trying to make is that they were woken up during this incident and that she said something. Yeah. And it corroborates. Well, Katina steadfastly says no, she didn't say anything until after the events are all over with. And so the only statement she says she makes is to try to report the event to these two girls. That's not the same as saying, having her, hear her say no. There are lots of rational explanations. And you're right. That goes to the weight, doesn't it? It goes to the weight, but it also goes to when you look at the totality of what Katina claims happened, and this goes back to is what she said proof beyond a reasonable doubt. And one of the ways of looking at it, let me back up. Can you just maybe help me a little bit, because it ties back into your jury instruction. Right. The jury instruction says, in effect, that even if there had been nobody else in this bed and it was Katina's word against your client, they could find beyond a reasonable doubt based on what they, on the evidence. Right. So now we introduce that there are other kids in the room, one of whom testifies and does, in fact, corroborate some of what Katina testifies, the porno movie and some of the other things. And she, in fact, says she recalls hearing her call out or say something about no. Now, maybe Katina did and didn't remember. So, I mean, a reasonable juror could reach that conclusion, I assume, that maybe Don had a somewhat better recollection than Katina. That's not irrational. So what, at the end of the day, what's the constitutional absence here? What the problem at the end of the day, and it does tie into the jury instruction, what California law, and it's the same with Federal law. When you look at a Federal direct appeal and you're looking at sufficiency of the evidence, the testimony of a single witness is sufficient as long as it's not inherently improbable. Okay. So our argument, and the only way we'll win, is if the scenario Katina, the total scenario that Katina gave that jury is whether that's inherently improbable. Is it likely that a grown man got into bed with five sleeping children, molested one of them for 20 minutes, smoked a cigarette with her, fell asleep, reeked of beer, and not one of those other kids woke up during that event? That's the case. Ever tried to wake a sleeping child in the middle of the night? I have. And sometimes with success, sometimes with abject, taking kids to the bathroom and they slept through the whole event. Right. So that part, we accept, you know, I accept that that is problematic. And the problem with this case, and the scary part is apparent for me with this case, is if the reasonable doubt jury instruction means anything, is that when you've got five kids in the bed, so you've got four sleeping kids in the pattern that she says, which is three this way, two across the bed. I don't care how big the bed is. It can be huge. You put a grown man into it and do the acts that she says took place. There's rolling back and forth. There's some talking. There's cigarette smoking. It lasts for 20 minutes. I agree. These child molestation cases are difficult. There. This is the second one on this calendar this week. And it is the molested child trying to be examined about what happened to her. And the adult male who's in the prison for many, many years. Okay. So that's a problem. But that doesn't mean you can't prosecute, and it doesn't mean you can't take the case to the jury. And all of what you've said so far, with all respect, so far strikes me as a very effective impeaching argument to the jury. Right. And where the two aspects to the case, and I guess I need to pay some attention to time. You have about five minutes left. Yeah. Thank you. When you. It's sort of a rhetorical question, so you don't have to. No, I know. But it is the heart of the case. The heart of this case, whether it's viewed on the foundations of the jury instruction problem, or if it's just viewed under Jackson v. Virginia, the heart of the case is when is something so inherently probable, improbable, that you violated the reasonable doubt instruction? That's this case. All right. Well, our position is that it is objectively unreasonable to have 12 jurors fined and the court defined that they would be convinced to near certitude that none of those children would have worked if this scenario actually took place. The only thing I want to mention about the jury instruction problem, which buttresses the problem with the reasonable doubt, is what the jurors were told. And this is what really is the heart of that issue, is they were given only part of the no corroboration instruction. The instruction, the law, both federally and in California, is that the testimony of a single witness is sufficient as long as it's not inherently improbable, as long as it proves the point beyond a reasonable doubt. The reasonable doubt instruction wasn't there. They were told if you believe Katina, that's enough. You don't need to corroborate her testimony. And in the context of this case, the jurors could say, look, we've got this poor, pitiful girl on the stand. I believe something happened to her. And then if they're going to wrestle with what does reasonable doubt mean, and that obviously was the problem with this case, that's what they had to focus. Both sides agreed it was a credibility contest. Counsel, you've only got three and a half minutes left. Do you want to – first of all, you can reserve if you wish, but did you want to say anything about the instructions, Calgary instructions? I thought I was leading into that. So the problem with the instruction issue, again, is that they were not told that they had to believe Katina beyond a reasonable doubt. They're just – Well, the reasonable doubt argument, again, now just help me sort this out. If you look at – you've got two jury instructions you attack, both of which independently have been affirmed as proper under – by this Court. Right. Okay. So now you're saying, but if you take them all together and you look at the totality, there's a constitutional infirmity, which I think you've now singled out, that when it got down to the corroboration, it didn't add the immediate tagline, so long as you corroborated testimony convinces you beyond a reasonable doubt. Right. Okay. The way jury instructions come in, as you well know, and has happened in this case, they're put together as a quilt, all right, and you've got to go back and somebody has to tie them together. That's what counsel does in argument. Again, the argument you're making is not foreclosed. Indeed, as commanded, one could argue by the jury instructions that, yes, uncorroborated testimony may be sufficient, but people of the jury, please remember, you must always find beyond a reasonable doubt. Right. I mean, you get instructed that in the opening instructions as a juror in a criminal case. I acknowledge that's the weaker aspect of the jury instruction issue, is finding whether that was objectively unreasonable not to give that combination in that single instruction since it was given somewhere else. Okay. But that's the argument. All right.  Thank you. May it please the Court, Deputy Attorney General David Lowe for Respondent in the patelli. Your Honors, I think this Court is definitely focused on the right track, that the question here is the reasonableness of the State court decision. This Court's aware, I'm sure, and even if it wasn't, it needs to be more than just clearly erroneous. I don't think there's any error whatsoever in the State court decision. Your Honor asked about the pictures. You'll find them in CT 138 and 139. They apparently were presented to the jury. I know there was also testimony from one of the defense witnesses about the bed. Excuse me, counsel. There's a lot of noise outside. Yes. Could you speak up a little louder, please? Certainly. There was testimony. CT 138? 138 and 139. And I'm not sure how that corresponds to the excerpts of record. Well, all right. So what did they show? They corroborate the standard size bed? Well, yeah. It's a bed. Well, no, no, no, no. Wait a minute. The issue isn't size. Yes. And standards are kind of subjective. I mean, if I get a standard bed in my hotel and I've asked for a queen or a king, I know the difference. Right. And I understand that. I was going to submit that standard is kind of subjective. It looks like a standard bed to me. Well, that's not okay. You didn't try the case? No, I didn't try the case. And the photos don't reveal whether it's? The photos reveal they have bodies laying on them so you can look and see. They're not children, it doesn't look like. I know that one of the defense witnesses testified about the size of the bed. All this was presented to the jury. It was all something for the jury to consider in the context of all the testimony. I'm asking. I mean, I understand. Right. It's what I read in the transcript. It says now we'll go up to this diagram and it says the diagram isn't always a very good depiction of what went on in relationship. So that's why I was asking. We can look at the record and see what it says. Sure. This wasn't an issue that was lost on the jury. It was argued to them. It was also argued to the trial judge in the new trial motion about inherent probability. And the trial judge made the comment that I understand your argument and I'm not going to substitute my opinion or even if it's different than what the jury had decided. We're really just talking about a credibility contest. And it is difficult in child molestation cases. And this is a credibility contest that in this case the appellant lost. The jury was clearly focused on this as both if you examine the closing arguments, both the prosecution and defense argued this almost exclusively that it is credibility. You guys are going to have to make that determination. As for Dawn's testimony, I disagree with counsel's characterization.  She gave statements. She testified that Katina said something like no or leave me alone or go away. And she also made statements to the defense, excuse me, the prosecution's investigator on two separate occasions that Katina said something to the effect of no, leave me alone or go away. She also corroborated on the context that they found the pornographic movie out in the BCR after they had in fact been watching some movie about an Indian or something to that effect earlier in the evening. So that's not the tape they left in the BCR. And she also corroborated the fact that the defendant had been drinking heavily that evening or at least smelled of alcohol. As for the jury instructions, the only thing I would like to say about that is after the sufficiency of the evidence, a single witness is sufficient to establish a fact, it was immediately followed by the reasonable doubt instruction. And beyond that, I don't have anything else unless the Court has some questions. No questions, counsel. Okay. Thank you. Ms. McClintock, you have a little reserve time. If you don't have the objection, I'd be fine to publish it since you're going to talk about the case for a moment. It's the clerk's transcript. Would you be speaking to the microphone, please? If you would like, I'd be fine with me to publish what he has out, the clerk's transcripts, the photographs, since they were not, I'm sorry, a part of the excerpts of record, so it's not something the panel has immediately available. If you want to look at them right now, that would be fine with me. Do you agree that we can find them at CT 13839? Yes. All right. Well, we'll find them.  Thank you. There are only two comments that I would make. One regarding the trial judge's decision in the motion for new trial. I think if you look at that, that you will read it and see that the trial judge and I've forgotten the Federal rule number, but there's a similar proceeding in Federal court where you can, where the trial judge can act as a 13th juror, and he doesn't find that there isn't sufficient evidence, but he finds that the evidence is so incredible that there is a, there's a manifest injustice question. And it doesn't bar retrial. And it permits the judge to essentially give a, vacate the verdict. And I think that's really the analysis that the trial judge was looking at. So he wasn't answering, I don't think, the Jackson versus Virginia standard question. The only other point I'd like to mention about corroboration, the Attorney General was talking about Don's testimony corroborating the statement that no, we beat that horse to death already. The pornographic movie and drinking heavily. None of those facts, yes, it corroborates those facts. None of those facts are elements of the offense. And you don't get to put on a witness to corroborate the complainant's trustworthiness or her credibility. I don't get up to say, you know, she's a really nice kid and she never lies. And those facts have nothing to do with the elements of the offense. So it's not a legal. Kennedy. You would concede it does go to credibility if she recounts. It goes to her credibility. But I have to accept that the jury found Don or, excuse me, Katina, credible. So that doesn't add anything to the analysis that we have to do. Okay.  Counsel, your time has expired. The case just argued will be submitted for decision. And we will hear argument in Patterson v. Minch. Thank you.
judges: Browning, O'scannlain, Fisher